IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, | § | |
| SUCCESSOR IN INTEREST TO LEGACY | § | |
| MEDICAL CONSULTANTS, LLC | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-CV-00941-O |
| | § | |
| FOOT & ANKLE DOCTORS, INC., WENDY | § | |
| MOLINA, AND FARSHID NEJAD | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**

**BLANK ROME LLP**

Gregory J. Moore (*NDTX admission pending*)
Texas Bar No. 24055999
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2

    A.    Legacy's Agreements with Defendants ............................................ 2

    B.    The Texas Contacts .......................................................................... 3

    C.    Procedural History ........................................................................... 4

III.  ARGUMENT ............................................................................................ 4

    A.    This Court May Exercise Personal Jurisdiction Over
           Defendants ........................................................................................ 4

          1.    Defendants had sufficient minimum contacts with Texas to satisfy
               personal jurisdiction ............................................................ 6

          2.    Legacy's cause of action arose out of Defendants' contacts with
               Texas .................................................................................... 9

          3.    This Court's exercise of personal jurisdiction would not be unfair or
               unreasonable ...................................................................... 10

    B.    Legacy Stated Claims Against the Individual Defendants,
           Drs. Nejad and Molina ................................................................... 12

IV.   CONCLUSION ....................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ................................................................5, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................12

*Bibbs v. Molson Coors Beverage Co. USA, LLC*,
  616 F.Supp.3d 606 (N.D. Tex. 2022) .................................................9

*Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*,
  642 F.Supp.3d 560 (E.D. Tex. 2022) .................................................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................6, 7, 9

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*,
  963 F.2d 90 (5th Cir. 1992) ...........................................................6

*CSFB 1998-C2 TX Facilities, LLC v. Rector*,
  No. 3:14-CV-4142, 2015 WL 1003045 (N.D. Tex. Mar. 5, 2015).........................10

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*,
  176 F.3d 867 (5th Cir. 1999) ...........................................................4

*Fintech Fund, F.L.P. v. Horne*,
  836 F.App'x 215 (5th Cir. 2020) .......................................................10

*Freudensprung v. Offshore Tech. Servs., Inc. et.al.*,
  379 F.3d 327 (5th Cir. 2004) ...........................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)......................................................................5

*Holt Oil & Gas Corp., et.al. v. Harvey*,
  801 F.2d 773 (5th Cir. 1986) ...........................................................8

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ..........................................................12

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945) ............................................................................5

*J.B. Int'l, LLC v. William Noble Rare Jewels, L.P.*,
    2023 WL 7190642 (N.D. Tex. Nov. 1, 2023) ................................. 13, 14

*J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*,
    2012 WL 4512500 (N.D. Tex. Oct. 2, 2012)................................... 13, 14

*Laughlin Energy Motor Sports, LLC v. Americana Pro Detailing Prods. LLC*,
    No. 4:22-CV-00876-P, 2023 WL 1805870 (N.D. Tex. Feb. 7, 2023)....................................11

*Mock v. St. David's Healthcare P'ship, LP, LLP*
    No. 3:22-CV-00708, 2025 WL 567838 (Tex. App. Feb. 21, 2025) .......................................15

*Moncrief Oil Intern. v. OAO Gazprom, et.al.*,
    481 F.3d 309 (5th Cir. 2007) ................................................................8

*Nationwide Agribusiness Ins. Co. v. Varco Pruden Buildings, Inc.*,
    2020 WL 5046528 (N.D. Tex. Aug, 3, 2020) ........................................ 15

*Plan B Holdings, LLC v. RSLLP*,
    681 S.W.3d 443 (Tex. App.—Austin 2023)...................................... 13, 14

*Religious Tech. Ctr. v. Liebreich*,
    339 F.3d 369 (5th Cir. 2003) ................................................................5

*Robertson v. Bland*,
    517 S.W.2d 676 (Tex. App.—Houston [1st Dist.] 1974, writ dism'd) ............................. 13, 14

*Sangha v. Navig8 ShipManagement Private Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ................................................................ 10

*Sayers Constr., L.L.C. v. Timberline Constr., Inc.*,
    976 F.3d 570 (5th Cir. 2020) ................................................................6

*Seiferth v. Helicopteros Atuneros, Inc.*,
    274 F.3d 266 (5th Cir. 2006) ................................................................6

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ............................................................................5

*Stroman Realty, Inc. v. Antt*,
    528 F.3d 382 (5th Cir. 2008) ................................................................5

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ..............................................................8

iii

*Sw. Offset, Inc. v. Hudco Pub. Co.*,
    622 F.2d 149 (5th Cir. 1980) .................................................................................6

*Ward v. Prop. Tax Valuation, Inc.*,
    847 S.W.2d 298 (Tex. App.—Dallas 1992, pet denied) ...................................... 13

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) .............................................................................10

*Wright Group Architects-Planners, P.L.L.C. v. Pierce*,
    343 S.W.3d 196 (Tex. App. 2011) .................................................................12, 13

**Statutes**

28 U.S.C. § 1441(a) ...............................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(2) ..........................................................................................12

Fed. R. Civ. P. 12(b)(6) .........................................................................................12

## I.    INTRODUCTION

This case arises from Defendants' deliberate and sustained business relationship with Legacy, a Texas-based company, through which Defendants purchased millions of dollars' worth of specialized medical products over six months. Far from being a one-time or incidental transaction, Defendants' conduct reflects a purposeful, ongoing course of dealing with a Texas entity, governed by Texas law, and centered on Legacy's operations in Fort Worth, Texas. The parties' relationship was memorialized in two separate written agreements, each executed by Legacy in Texas, and each requiring Defendants to remit payment to Legacy's Texas bank account. The products at issue were ordered by Defendants, processed and shipped from Texas, and, when necessary, returned by Defendants to Texas. These facts demonstrate that Defendants not only availed themselves of the benefits of doing business in Texas but also directed their activities toward Texas in a manner that squarely supports the exercise of personal jurisdiction.

Defendants' attempt to characterize themselves as passive California residents with no meaningful connection to Texas is belied by the record. Over the course of the parties' relationship, between February and September 2024, Defendants placed orders almost every day, totaling more than $3 million; remitted almost $1 million in payments to Legacy's Texas bank; and returned $216,382.99 worth of Legacy products to Legacy's Texas headquarters. Each of these actions was undertaken with full knowledge that Legacy was a Texas company, and each was governed by contracts expressly providing for the application of Texas law. The harm alleged—Defendants' failure to pay for products received—was felt in Texas, where Legacy's business is based and where the financial impact of Defendants' breach is most acutely experienced. The substantial events giving rise to Legacy's claims—including contract execution, order fulfillment, invoicing, payment receipt, and product returns—all occurred in Texas.

In sum, the facts demonstrate that Defendants' contacts with Texas are neither random nor attenuated but instead reflect a deliberate and ongoing relationship with a Texas business. Indeed, Judge Pittman in the Northern District of Texas, in a different contract dispute involving Legacy and another medical provider, found personal jurisdiction under circumstances almost identical to those here. Accordingly, the exercise of personal jurisdiction in this district is fully consistent with due process and the interests of justice. Defendants' motion to dismiss should be denied.

Additionally, Legacy has plausibly plead individual liability claims against Drs. Molina and Nejad because they failed to disclose they were signing the agreements in any representative capacity.

## II.    STATEMENT OF FACTS

### A.    Legacy's Agreements with Defendants

Legacy is an integrated marketer of proprietary regenerative biomaterial products processed from human amniotic membrane and other birth tissues. Def.'s Notice of Removal, ECF No. 1, Attachment 5, Pl.'s Orig. Pet. (hereinafter, "Compl.") ¶ 12. Legacy markets its products to doctors all over the country. *Id*. Legacy is a Texas limited partnership with its principal place of business in Fort Worth, Texas. *Id.* at ¶ 4.

On or about February 9, 2024, Defendant Dr. Molina executed a Purchase Agreement with Legacy for Impax™ Amniotic Allograft, a human cell and tissue product used in the treatment of chronic and acute wounds ("Impax Agreement"). Compl. ¶ 1; *see also* Def.'s Notice of Removal, ECF No. 1, Attachment 6. On or about April 1, 2024, Defendants Dr. Nejad executed a Purchase Agreement for SurGraft FT™ Allograft, a human cell and tissue product used in the treatment of chronic and acute wounds ("SurGraft Agreement") (together, the "Agreements"). *Id.*; *see also* Def.'s Notice of Removal, ECF No. 1, Attachment 7. Neither Drs. Molina nor Nejad indicated they were signing only in any representative capacity. *Id.* at ¶¶ 6-7.

Except for the specific brand of human tissue and product prices, the terms of the Agreements are the same. Compl. ¶¶ 17-21; *compare* Impax Agreement *with* SurGraft Agreement. Per the terms of the Agreements, Legacy agreed to sell, and Defendants agreed to purchase, human cell and tissue products. Compl. ¶ 17; *see also* the Agreements § 1. Defendants would then administer these products to patients as medically necessary. Compl. ¶ 17; *see also* the Agreements § 4. The Agreements required Defendants to remit payment to Legacy within sixty (60) days after product shipment. Compl. ¶ 21; *see also* the Agreements § 6.

The parties' course of dealing was consistent and substantial. After Defendants submitted order forms for human tissue products, Legacy's employees in Fort Worth, Texas, generated order statements reflecting the terms of each purchase. Compl. ¶ 18; *see also* the Agreements § 6. Legacy then promptly packed and shipped the products identified on the order statement for delivery to Defendants using second-day delivery. Compl. ¶ 18; *see also* the Agreements § 3. Legacy also provided the shipment's delivery status information to Defendants. Compl. ¶ 18; *see also* the Agreements § 3. Then, on the day the products were shipped, Legacy sent Defendants an invoice, per order, via email. Compl. ¶ 19; *see also* the Agreements § 6. At the end of each month, Legacy delivered to Defendants an email with a summary PDF document containing all the prior month's invoices, which reflected all amounts Defendants owed Legacy for products ordered in the preceding month. Compl. ¶ 20; *see also* the Agreements § 6. Defendants were bound to make payment to Legacy in the amount specified on the monthly invoice for all products they received within sixty (60) days of shipment. Compl. ¶ 21; *see also* the Agreements § 6.

**B.    The Texas Contacts**

Between February 9, 2024, and September 12, 2024, Defendants placed 191 orders totaling $3,185,812 in Legacy products, all processed, packed, and shipped from Fort Worth, Texas. See Ex. 1 (Bini Decl.) at ¶ 12. The Agreements all state that they are governed by Texas law. *See*

Compl. at ¶¶ 40, 66; *see also* the Agreements § 7. Legacy executed the Agreements in Fort Worth, Texas. Ex. 1 at ¶ 6. Legacy stored the products in its Fort Worth, Texas, warehouse. *Id.* Defendants remitted almost $1 million in payments to Legacy's Texas bank account and returned over $200,000 worth of products to Legacy's Fort Worth headquarters. *Id.* at ¶ 14. Legacy also received email communications from Defendants. *Id.* As of September 2025, Defendants remain delinquent on a liquidated balance of $2,108,297.26. *Id.* at ¶ 16; Compl. Ex. C ¶¶ 7-8.

### C.    Procedural History

Legacy initiated this action by filing suit against Defendants in the 48th Judicial District Court of Tarrant County, Texas. Legacy's claims included breach of contract, and, in the alternative, quantum meruit, promissory estoppel, and unjust enrichment, all arising from Defendants' alleged failure to pay for products supplied under the Agreements. *See* Compl. Defendants exercised their right of removal and transferred the case to this Court pursuant to 28 U.S.C. § 1441(a). *See* Def.'s Notice of Removal, ECF No. 1. After removal, Defendants responded by filing this Motion to Dismiss the complaint for lack of personal jurisdiction and failure to state a claim. *See* Def. Mot. to Dismiss and Brief in Supp. ("Mot."), ECF No. 2.

## III.    ARGUMENT

Defendants' substantial contacts with Texas allow this Court to exercise personal jurisdiction over them. Additionally, Legacy has properly asserted claims against the individual Defendants, Drs. Nejad and Molina, because they executed contracts with Legacy in their personal capacity as the "Customer" next to their respective signatures.

### A.    This Court May Exercise Personal Jurisdiction Over Defendants

A federal district court may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits it, and the exercise of jurisdiction is consistent with due process. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

The Texas long-arm statute extends to the limits of the Federal Constitution, so the analysis focuses on whether Defendants have sufficient minimum contacts with Texas and whether the exercise of jurisdiction would be fair and reasonable. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

Due process, in turn, requires that the defendant have "minimum contacts with the forum state such that the defendant purposefully availed himself of the privilege of conducting activities and business in the forum state." *Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F.Supp.3d 560, 564 (E.D. Tex. 2022). The Fourteenth Amendment minimum contacts analysis "allows a court to assert personal jurisdiction over defendants that have meaningful 'contacts, ties, or relations' with the forum state." *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)). Such contacts can give rise to either general or specific jurisdiction. *Id.* General jurisdiction exists when a defendant's contacts with the forum state are substantial and continuous, even if unrelated to the cause of action. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003). Specific jurisdiction may exist where the "controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Here, this Court has specific personal jurisdiction over Defendants.

Courts apply a three-step test to determine whether a court can exercise specific jurisdiction. *Seiferth v. Helicopteros Atuneros, Inc.*, 274 F.3d 266, 271 (5th Cir. 2006). The first is that the defendant must have had minimum contacts with the forum state, meaning that the defendant purposefully directed his activities at the forum state and purposefully availed himself of the privilege of conducting business in the forum state. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). Second, the plaintiff's cause of action must have arisen out of the

defendant's contacts with the forum state. *Id.* And third, the exercise of personal jurisdiction must not be unfair or unreasonable. *Id.*

### 1.     Defendants had sufficient minimum contacts with Texas to satisfy personal jurisdiction

Defendants' contacts with Texas are the result of their own purposeful actions. Courts will find purposeful availment where the contacts with the forum state result from the defendant's actions that create a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "In a breach-of-contract dispute the [minimum contacts] analysis turns on a 'highly realistic' assessment of the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King*, 471 U.S. at 479) (alterations in original). Courts will give "weighty consideration" to the place where the contract is performed. *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992). Furthermore, courts will also treat the law governing the contract as a relevant factor in determining whether there was purposeful availment. *See id.*; *Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 152 (5th Cir. 1980).

Here, Defendants' contacts with Texas are the result of Defendants' own purposeful actions. They voluntarily and affirmatively executed two contracts with Legacy, a Texas entity domiciled in Tarrant County, and Defendants agreed that Texas law would govern the same. Compl. ¶ 11; *see also* the Agreements § 7; Ex. 1 at ¶ 8. Defendants went on to engage in repeated transactions with Legacy under the Agreements, placing 191 orders totaling more than $3 million over a period of six (6) months, while aware of the fact that Legacy was a citizen of Texas. Ex. 1 at ¶ 6, 12. They remitted almost $1 million in payments to Legacy's Texas bank account and returned products to Texas. *Id.* at ¶ 14. The Agreements were executed and performed in Texas,

with products shipped from Legacy's Fort Worth facility based on Defendants' specific orders. *Id.* at ¶ 6. These facts establish a substantial connection with Texas and satisfy the minimum contacts requirement.

Moreover, Legacy executed the Agreements in Texas, and the Agreements were performed, for the most part, in Texas. *Id.* at ¶¶ 6, 10-11. The products which were the subject of the Agreements were stored in and dispatched from Legacy's Fort Worth facility after Defendants placed orders. *Id.* at ¶ 6. There was no unilateral decision by Legacy to ship the products, as the products would be shipped from Texas based on Defendants' specific orders and authorization. *Id.* at ¶ 10. Defendants had the option to take their business elsewhere and avoid contract performance in Texas but chose not to.

Defendants need not have physically entered or been present in Texas for this Court to exercise jurisdiction. *See Burger King*, 471 U.S. at 476. It is the reality of contemporary business transactions that "a substantial amount of business" will be "transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.*

Defendants argue that merely entering into a contract is not enough for personal jurisdiction, but Legacy relies on more than just the mere existence of a contract by itself to assert personal jurisdiction. ECF. No. 2 at p. 7. As mentioned above, Legacy negotiated the multiple contracts from Texas and executed the contracts in Texas. Ex. 1 ¶ 6. Legacy has fulfilled 191 of Defendants' orders in Texas, amounting to more than $3 million worth of product over the course of six (6) months, to Defendants from Texas. *Id.* at ¶ 6, 12. The contractual terms included a Texas choice-of-law provision that Defendants voluntarily signed and assented to. Compl. ¶ 11; *see also* the Agreements § 7; Ex. 1 at ¶ 8. Legacy shipped products to Defendants from Texas. Ex. 1 at ¶

7

11. Defendants sent money to Legacy's Texas bank account, Legacy received email communications from Defendants, and Defendants even shipped about $216,000 worth of product back into Texas. Ex. 1 ¶ 14.

Defendants specifically rely on *Freudensprung v. Offshore Tech. Servs., Inc. et.al.*, 379 F.3d 327 (5th Cir. 2004), *Holt Oil & Gas Corp., et.al. v. Harvey*, 801 F.2d 773 (5th Cir. 1986), *Moncrief Oil Intern. v. OAO Gazprom, et.al.*, 481 F.3d 309 (5th Cir. 2007), and *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) in support of their assertion that the Agreements between Legacy and Defendants here are insufficient for personal jurisdiction. This reliance is misplaced.

First, *Freudensprung* is distinguishable because the contract at issue specified that it was to be governed by English law and that the material portions of the contract were to be performed in West Africa, not Texas. *See* 379 F.3d 327, 345 (5th Cir. 2004). Second, *Holt Oil* is distinguishable because the contract at issue specified that Oklahoma law would govern the agreement, and because the defendant only "sent three checks . . . in partial performance" of its obligations. 801 F.2d 773, 778 (5th Cir. 1986). In contrast, the current Defendants have a contract governed by Texas law and have remitted more than a million dollars, in multiple payments, over six (6) months. Third, *Moncrief* is distinguishable because the agreements at issue in that case "were executed in Russia, with a Russian corporation, concerning a Russian joint venture, to develop a Russian gas field. Further, the Cooperation Agreement provided for arbitration in Russia, under Russian law." 481 F.3d 309, 313 (5th Cir. 2007). Finally, *Stuart* is distinguishable because the agreement in *Stuart* "did not contemplate a long-term relationship with the kinds of continuing obligations of wide-reaching contacts envisioned by the *Burger King* contract." 772 F.2d 1185, 1194. Instead, the *Stuart* case involved the one-time purchase and shipment of two items; the contract also had a California choice-of-law provision, not Texas. *Id.* at 1188.

8

In sum, the cases Defendants rely upon to defeat specific jurisdiction do not present the continuous and systemic contacts with Texas as the case at hand. Here, Defendants had a comparatively long-term contractual relationship with Legacy. Indeed, Defendants executed two different contracts and placed hundreds of orders within six (6) months. Ex. 1 ¶ 12. Moreover, the Agreements between Legacy and Defendants all had Texas choice-of-law provisions. Compl. ¶ 11; *see also* the Agreements § 7; Ex. 1 ¶ 8.

Indeed, Judge Pittman in the Northern District of Texas, addressing the issue of personal jurisdiction in the context of a different contract dispute between Legacy and a medical provider, found personal jurisdiction over a defendant similarly situated to the current Defendants. *See* Exhibit 2*,* Order Denying Def's Motion to Dismiss.

Accordingly, Defendants had sufficient contacts and connections with Texas to satisfy the requirements of minimum contacts and purposeful availment as required by the Constitution.

## 2.    Legacy's cause of action arose out of Defendants' contacts with Texas

Legacy's claims arise directly from Defendants' contacts with Texas: the contracts they signed with a Texas entity, the shipment of products from Texas, the payments made to a Texas bank account, and the return of products to Texas. The litigation is thus directly related to Defendants' purposeful activities in Texas. For a forum to have specific personal jurisdiction over a defendant, the suit must "arise out of or relate to" the defendant's contacts with the forum state. *Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F.Supp.3d 606, 614 (N.D. Tex. 2022) (alterations omitted). Here, Legacy's suit against Defendants "arises out of" and "relates to" Defendants' contacts with Texas. *Id.*. Namely, the contracts they signed with a Texas entity and with a Texas choice-of-law provision, the shipment of products from Texas that they accepted, the payments they made into a Texas bank account, and the shipment of products into Texas that they

wanted to return. Ex. 1 at ¶ 6, 8, 10, 12-14. In short, Legacy's cause of action arose from Defendants' contacts with Texas.

### 3.    This Court's exercise of personal jurisdiction would not be unfair or unreasonable

Defendants have not argued, let alone shown, that the exercise of personal jurisdiction would be unfair or unreasonable. In evaluating whether the exercise of personal jurisdiction would be fair and reasonable, courts consider the following factors:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Fintech Fund, F.L.P. v. Horne*, 836 F.App'x 215, 221 (5th Cir. 2020) (citing *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018)).

Defendants bear the burden of making a "compelling case" that the assertion of jurisdiction is unfair and unreasonable. *See Horne*, 836 F.App'x at 221; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ("Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."). It is "rare to say the assertion is unfair after minimum contacts have been shown." *Brandt*, 195 F.3d at 215. Furthermore, "[t]he burdens imposed by travel to and from a forum are not enough, standing alone, to make the exercise of specific jurisdiction unreasonable." *CSFB 1998-C2 TX Facilities, LLC v. Rector*, No. 3:14-CV-4142, 2015 WL 1003045 at *6 (N.D. Tex. Mar. 5, 2015).

Here, Defendants have failed to argue *at all* why the exercise of personal jurisdiction would be unfair or unreasonable and thus fail to meet their burden. ECF No. 2 at p.6-11. Further, because Defendants have minimum contacts with Texas, "the interests of the forum and the plaintiff justify even large burdens on the defendant." *See Brandt*, 195 F.3d at 215. Texas has a substantial interest

in ensuring that contracts entered by its residents are enforced. *See Laughlin Energy Motor Sports, LLC v. Americana Pro Detailing Prods. LLC*, No. 4:22-CV-00876-P, 2023 WL 1805870 at *3 (N.D. Tex. Feb. 7, 2023). Legacy, a resident of Tarrant County, has an interest in "maintaining one convenient and effective lawsuit in its place of domicile." *Id.* Accordingly, the exercise of personal jurisdiction over Defendants would not be unfair or unreasonable.

Both the private and public interest factors either favor the Northern District of Texas or are neutral, and Defendants have not met their burden to show otherwise. Additionally, the Court has personal jurisdiction over Defendants based on their substantial, purposeful contacts with Texas. The case should remain in the Northern District of Texas.

In sum, the Fifth Circuit's three-step test for specific jurisdiction is satisfied here: (1) Defendants purposefully directed their activities at Texas by entering into and performing under the agreements with a Texas entity; (2) Legacy's claims arise directly from these Texas-based contacts, including the contracts, shipments, and payments; and (3) the exercise of jurisdiction is neither unfair nor unreasonable, as Texas has a strong interest in enforcing contracts involving its citizens, and Defendants have not shown that litigating in Texas would impose an undue burden. The burden of travel alone is insufficient to defeat jurisdiction, especially where the Defendants have purposefully availed themselves of the forum.

If the Court finds that the current record is insufficient to resolve the issue of personal jurisdiction, Legacy respectfully requests leave to conduct limited discovery from Defendants regarding their contacts with Texas. This is a well-established practice when jurisdictional facts are in dispute or unclear.

### B. Legacy Plausibly Stated Claims Against the Individual Defendants, Drs. Nejad and Molina.

Under Rule 12(b)(6), a complaint may be dismissed "if it fail[]s to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under this standard and Rule 8(a)(2), a complaint "does not need detailed factual allegations," and allegations must merely "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a claim need only be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, in deciding a motion to dismiss, the court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Because Legacy has plausibly stated contract claims against the individual Defendants, Drs. Nejad and Molina as signatories of the contracts, representing they were "Customers," this Court should deny Defendants' Rule 12(b)(6) motion to dismiss.

"It is well-settled that the law does not presume agency." *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.) (holding that the individual developer, who signed the contract with the architecture firm, signed it in his personal capacity). "When an agent seeks to avoid personal liability on a contract he signs, it is his duty to disclose that he is acting in a representative capacity and the identity of his principal." *Id.* "To establish the affirmative defense of agency, a party must prove he made those disclosures." *Id.* "A person who fails to disclose that he is signing a contract as an agent may be held liable on the contract." *Id.* Here, the contracts are executed by Drs. Nejad and Molina in their individual capacity, each signing as the "Customer." Because Drs. Nejad and Molina failed to

12

disclose they were signing the Agreements as agents of Foot & Ankle, Legacy has raised a right to relief against them that is "plausible on its face." *Wright*, 343 S.W.3d at 199. The allegations, taken as true and viewed in the light most favorable to the non-moving party, raise a non-speculative claim their individual signatories create personal liability under the contracts.

Defendants specifically rely on *Ward v. Prop. Tax Valuation, Inc.* 847 S.W.2d 298, 300 (Tex. App.—Dallas 1992, pet denied), *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657–58 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e), *J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*, No. 3:10-CV-02489-BF, 2012 WL 4512500, at *4 (N.D. Tex. Oct. 2, 2012), *J.B. Int'l, LLC v. William Noble Rare Jewels, L.P.*, No. 3:22-CV-1422-K, 2023 WL 7190642, at *3 (N.D. Tex. Nov. 1, 2023), *Robertson v. Bland*, 517 S.W.2d 676 (Tex. App.—Houston [1st Dist.] 1974, writ dism'd), and *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443 (Tex. App.—Austin 2023) in support of their assertion that Drs. Nejad and Molina may not be held personally liable on the contracts as a matter of law. This reliance is misplaced and all these cases are easily distinguishable.

<u>First</u>, these cases were all decided after the development of a full factual record. None were decided at the motion to dismiss stage.

<u>Second</u>, *Ward* is distinguishable because it involved the executor of an estate, not the officer, director, or employee of a corporation.[1] 847 S.W.2d at 300.

<u>Third</u>, *Gulf* is distinguishable because the contract at issue was ambiguous on its face. 707 S.W.2d at 657–658. Here, Legacy has plead that the Agreements are **un**ambiguous: that Drs.

---

[1] Drs. Molina and Nejad allege, on the one hand, that the corporate entity, Foot & Ankle Doctors, Inc., is their employer while on the other hand claim authority to sign on behalf of the corporation, as a director or officer would ordinarily do. ECF No. 2 at p. 1. In either case, this dispute is distinguishable from *Ward* because *Ward* involved none.

Molina and Nejad are unambiguously personally liable because they failed to indicate they were signing in a representative capacity on behalf of the entity.

Fourth, *J & J* is distinguishable because *J & J* concerned standing of an individual to sue for breach of contract under circumstances where it was undisputed that the individual's sole connection to the contract was as a signatory as corporate representative. 2012 WL 4512500 at *4. Here, it **is** disputed that Drs. Molina and Nejad were acting in a representative capacity; this case is also not about standing.

Fifth, *J.B. Int'l* is distinguishable because the first contract at issue set forth an "express obligation of [the corporate entity]" in "[e]very numbered paragraph of the agreement." 2023 WL 7190642 at *3. Accordingly, the Court found that while "[the individual] signed the agreement without indicating whether he was acting as [the corporation's] representative, the Court must enforce the language in the body of a contract clearly indicating that the contract is the store's alone." *Id.* Here, both the corporate entity, Foot & Ankle, and the individual doctors, Drs. Molina and Nejad, were listed as the "Customer" under the Agreements.

Sixth, *Robertson* is distinguishable because, in *Robertson*, the individual signatory of the contract was the "necessary or proper officers or agents" and the plaintiffs were on notice of that. 517 S.W.2d at 677-678. Here, Drs. Molina and Nejad claim to be employees of Foot & Ankle Doctors, Inc. and executed the Agreements personally without indicating under what authority they had to act on behalf of the corporate entity. ECF. No. 2 at p.1.

Finally, *Plan B* is distinguishable because the contract at issue contained, in the signature block, the corporate entity's name and the word "By" before the individual's signature. 681 S.W.3d at 453–454. The court held this indicated the person was signing as a representative and on behalf of the company. *Id*. There is no such indication in the Agreements at issue.

Alternatively, if the court were to take seriously Defendants' arguments to the contrary, then by their own argument the Agreements would be ambiguous as to agency. In such case, like in *Gulf*, the court would need to allow discovery on the issue. *See* 707 S.W.2d at 658 ("We conclude that in the absence of a clear intent within the instrument to bind Buchanan in his individual capacity, the manner of execution is susceptible of two different and reasonable interpretations. . . . If the instrument is []ambiguous as a matter of law, extrinsic evidence is []admissible and the court is [not] barred from giving effect to that evidence.") (alterations added).

Dismissal at this stage is premature because Defendants' brief raises questions of fact about the parties' intent at the time of execution (i.e., over whether the parties intended Drs. Molina and Nejad to be jointly liable with the legal entity, Foot & Ankle Doctors, Inc.) as well as the ownership of the entity. In other words, Defendants' brief raises an ambiguity in the contract's plain language, and "[i]f the contract is uncertain about whether it was intended to bind the principal or the agent, parol evidence of the circumstances surrounding its execution is admissible to show the real understanding." *Id.* And "[i]f the contract contains an ambiguity, a fact issue arises as to the parties' intent, and [dismissal on the pleadings] is not the proper vehicle for resolving the contract dispute." *Mock v. St. David's Healthcare P'ship, LP, LLP*, No. 3:22-CV-00708, 2025 WL 567838, *3 (Tex. App. Feb. 21, 2025). It would be premature to dismiss the claim given this alleged ambiguity created by Defendants' asserted interpretation of the Agreements.

In sum, the Defendants' Motion to Dismiss confirms the need to need for further factual and legal development concerning the interpretation of the contract. The lack of a fully developed record "renders premature any effort by the Court to interpret the contract" *Nationwide Agribusiness Ins. Co. v. Varco Pruden Buildings, Inc.* Civ. Action No. 5:19-cv-083-M-BQ, 2020

WL 5046528, at * 6 (N.D. Tex. Aug, 3, 2020) (denying a motion to dismiss due to the need for further factual and legal development on a breach of contract claim).

Accordingly, the Court should find that the current record is insufficient to resolve the issue of agency, and therefore, Defendants' Motion to Dismiss at this stage should be denied.

## IV.    CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Dismiss. If the Court determines that the record is insufficient to resolve the issues of personal jurisdiction or agency, it should grant Legacy's request for limited discovery on these issues.

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Megan A. Altobelli*
Gregory J. Moore (*NDTX admission pending*)
Texas Bar No. 24055999
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

**<u>Certificate of Service</u>**

I certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record on October 2, 2025, via the Court's CM/ECF filing system in accordance with Fed. R. Civ. P. 5(b)(2).

By: *<u>/s/ Megan A. Altobelli</u>*
Megan A. Altobelli