IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LEGACY MEDICAL CONSULTANTS, LP | § § § |
| Plaintiff, | § § |
| v. | §   Civil Action No. 4:25-CV-00941-O |
| | § |
| FOOT & ANKLE DOCTORS, INC., ET AL., | § § § |
| Defendants. | § § |

### ORDER

Before the Court are Defendants' Motion to Dismiss and Brief in Support (ECF No. 2), Plaintiff's Response (ECF No. 15), and Defendants' Reply (ECF No. 18). After considering the briefing and relevant case law, the Court determines that Defendants' Motion to Dismiss should be **GRANTED in part** and **DENIED in part**.

### I.   BACKGROUND[1]

This suit arises from unpaid invoices. Defendant Foot & Ankle Doctors, Inc ("FAD"), entered into two separate agreements with Plaintiff, Legacy Medical Consultants, L.P., to buy proprietary medical products used to treat chronic, non-healing wounds. The first agreement to purchase Plaintiff's Impax product was executed by Defendant Wendy Molina ("Molina") in February 2024 ("Impax Agreement"). The second agreement to purchase Plaintiff's SurGraft product was executed by Defendant Farshid Nejad ("Nejad") in April 2024 ("SurGraft

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Original Petition. *See* Notice of Removal (Pl.'s Pet.), ECF No. 1. At this stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

1

Agreement"). Plaintiff brings claims against Molina and Nejad individually and against FAD. Plaintiff is a Texas citizen, and Defendants are all citizens of California.

Pursuant to the terms of each Agreement, Defendants would submit order forms for products to Plaintiff, and Plaintiff would then generate an order statement and pack and ship the requisite products. With each order, Plaintiff would email Defendants an invoice. Payment for each invoice was due 60 days after the product shipped, per the terms of the Impax and SurGraft Agreements. Yet, Defendants have failed to remit payment to Plaintiff for products ordered under each Agreement totaling at least $237,268 under the Impax Agreement and at least $1,871,029 under the SurGraft Agreement.

Plaintiff brought this action against Defendants in Texas state court seeking damages for the unpaid invoices by alleging breach of contract and suit on a sworn account, among other alternative claims. Defendants then removed the case to this Court (ECF No. 1) and moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The Motion to Dismiss is now ripe for the Court's review.[2]

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(2) – Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of proof is on the plaintiff as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–

---

[2] Defs.' Mot. Dismiss, ECF No. 2.

46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546.

"A federal district court sitting in diversity may exercise personal jurisdiction over a [nonresident] defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted). "Because Texas's long-arm statute reaches to the constitutional limits, the question [a federal court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a nonresident defendant purposefully avails himself of the benefits of the forum state, so that he "'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction can be specific or general. *Clemens*, 615 F.3d at 378. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (alteration in original) (internal quotation marks and citations omitted). Specific personal jurisdiction requires that a party "purposefully directed its activities at the forum state" and the Court has jurisdiction over claims "deriving from, or connected with" those activities. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

### B. Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

### III. ANALYSIS

#### A. Rule 12(b)(2) – Personal Jurisdiction

In this case, neither party alleges that Defendants are subject to general jurisdiction in Texas.[3] Thus, the dispute is whether the Court may exercise specific personal jurisdiction over this matter. The Fifth Circuit employs a three-step test in analyzing specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) (citation omitted).

---

[3] Defs.' Mot. Dismiss 5, ECF No. 2; Pl.'s Resp. 5, ECF No. 15.

1. <u>Minimum Contacts with Texas</u>

Defendants argue that they lack sufficient minimum contacts with Texas because they are California citizens who have no connections to Texas apart from de minimis dealings with Plaintiff.[4] Plaintiff argues that because Defendants voluntarily contracted twice with a Texas company, agreed to be bound by Texas law, placed 191 orders for over $3 million worth of products, and remitted almost $1 million to Plaintiff in Texas, they should be subject to this Court's jurisdiction.[5] Plaintiff is correct.

The Supreme Court and Fifth Circuit have long recognized that "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create . . . obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) (quoting *Burger King Corp.*, 471 U.S. at 473 (1985)). Although simply contracting with a Texas company is not enough to confer minimum contacts, the terms of the contract and the parties' course of dealing, negotiations, contemplated future consequences, and a choice of law clause are all considered. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223–24 (5th Cir. 2012). Even a "single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Here, Defendants purposefully reached beyond California to enter into substantial business agreements with Plaintiff, a Texas company.[6] Defendants entered into two agreements which clearly designate that Texas law applies.[7] And after signing the purchase agreements, Defendants

---

[4] Defs.' Mot. Dismiss 6–10, ECF No. 2.
[5] Pl.'s Resp. 6–11, ECF No. 15.
[6] *Id.* at 6.
[7] *Id*.

placed 191 orders into Texas through Plaintiff, for products totaling over $3 million.[8] Now that Defendants have failed to remit payment for the majority of these orders, Defendants protest being brought into court in Texas. But Defendants have not been haled into this Court "solely as a result of random, fortuitous, or attenuated contacts." *Clemens*, 615 F.3d at 379 (quoting *Burger King Corp.*, 471 U.S. at 475). Rather, they find themselves in front of this Court based on their decision to do business with a Texas company and then not pay that company for the goods they ordered. A "nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003).

Defendants rely on *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) and *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) to support their claim that jurisdiction is improper, but neither case is instructive here.[9] The dispute in *Moncrief* centered around a Texas corporation and Russian corporations engaged in a joint venture to develop a Russian gas field where one of the agreements provided for arbitration in Russia under Russian law. The plaintiff filed suit in Texas, and the district court concluded that specific jurisdiction did not exist. In affirming, the Fifth Circuit explained, "[Plaintiff's] Texas location was irrelevant." *Moncrief Oil Intern.*, 481 F.3d at 313. "The [parties'] contract was silent as to location. Given the nature of the work, there's no indication that the location of the performance mattered, and it is not clear how performance of that work would 'cause business activity.'" *Id*. After pointing out that the plaintiff had built an office in Russia specifically for the project, negotiated and prepared key elements in Russia, and agreed to be bound by Russian law, the court concluded that the defendants had not directed activities at Texas sufficient to support being haled into a Texas court. *Id.*

---

[8] *Id*.
[9] Defs.' Mot. Dismiss 8–9, ECF No. 2.

But here, Defendants agreed to be bound by Texas law. And although it may have been irrelevant initially to Defendants that Plaintiff is Texas company, once they knew it was a Texas company, they continued to engage with, order products from, and ultimately not pay a Texas company. Moreover, it should have been evident to Defendants that both their performance and Plaintiff's performance would cause business activity in Texas. These facts are quite different from *Moncrief*.

*McFadin* is similarly unpersuasive. In *McFadin*, the plaintiffs brought suit in Texas against a Colorado-based sales representative regarding an agreement, initiated by the plaintiffs, to sell leather goods made in Texas outside of Texas. In affirming the district court's determination that it lacked specific jurisdiction, the Fifth Circuit analyzed that (1) the "entire purpose of the agreement was to open up markets outside of Texas"; (2) "Denver was the hub of activities"; and (3) "[t]he little contact with Texas came only from the fortuity of the plaintiffs' residence there." *McFadin*, 587 F.3d at 760–61. Again, these facts are quite different from the facts in play here.

In this case, the entire purpose of the parties' contract was for Defendant to purchase proprietary medical products from a Texas-based company. And Texas was the hub of the parties' activity. Moreover, Defendants' contact with Texas came about not only from "the fortuity of Plaintiff's residence" here, but because Defendant sought out a Texas-based company. *Id.*

Defendants likewise assert that *Stuart v. Spademan*,[10] is "on-point authority" compelling dismissal.[11] But *Stuart* is inapposite and presents facts inverted to the facts presented here. The plaintiffs in *Stuart*, residents of Texas, contacted the owner of a California-based company that designed and manufactured ski bindings regarding a potential design revision. After the defendant shipped the plaintiffs two bindings to modify, the parties reached an agreement whereby the

---

[10] 772 F.2d 1185 (5th Cir. 1985).
[11] Defs.' Reply 5, ECF No. 18; Defs.' Mot. Dismiss 10, ECF No. 2.

plaintiffs would assign their new patent to defendant in exchange for compensation. After the defendant breached the agreement by failing to remit the required payment, the plaintiffs sued the defendant in Texas. The Fifth Circuit affirmed the district court's dismissal for lack of personal jurisdiction, finding that "the isolated shipment of goods to the forum at the instigation of the resident plaintiffs," among two other factors, did not support an inference that the defendant purposefully availed himself of Texas. *Stuart*, 772 F.2d at 1185.

Here, based on the facts before the Court, Plaintiff did not instigate sending products to Defendants in California; rather Defendants reached out beyond California to purchase products from a Texas company. *Stuart* might be on point if Plaintiff's and Defendants' roles were reversed, but in the facts presented here, it does not support dismissal.

After balancing the relevant factors, the Court concludes that Plaintiff has made a prima facie showing of minimum contacts to support a finding of specific personal jurisdiction over Defendants.

    2. <u>Plaintiff's Claims and Defendants' Texas Contacts</u>

The Court looks next to whether Plaintiff's claims arise out of or result from Defendants' contacts with Texas. A court may exercise specific jurisdiction over a nonresident defendant only when a "sufficient nexus" exists "between the [defendants'] contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378–79 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). At this juncture, the "central concern" of specific jurisdiction zooms into focus—"the relationship among the defendant, the forum, and the litigation." *In re Toyota Hybrid Brake Litig.*, 2021 WL 2805455, at *12 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Although Defendants dispute that Texas is the proper forum, neither party disputes

9

that Plaintiff's claims arise from Defendants' interactions with Plaintiff.[12] The only reason this case is before the Court is because Defendants contacted Plaintiff in Texas to purchase products and have subsequently refused to pay for those products. Accordingly, the Court finds that Plaintiff's claims arise out of, or result from, Defendants' contacts with Texas.

      3. <u>Personal Jurisdiction Fair and Reasonable</u>

Once minimum contacts are established, the burden shifts to Defendants to show how the assertion of jurisdiction would be unfair. *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 477 (1985)). To determine this, the Court evaluates five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006).

Defendants have failed to raise a compelling argument showing how jurisdiction would be unfair. Even though the burden on Defendants litigating in Texas is weighty, Texas's interest in protecting one of its companies from nonpayment and Plaintiff's interest in recovering payment for unpaid invoices totaling over $2 million weighs in favor of exercising jurisdiction. And, because the parties agreed to apply Texas law, adjudicating this case in Texas federal court where it is already pending weighs in favor of exercising jurisdiction to allow for an efficient resolution to this controversy.

---

[12] Pl.'s Resp. 9–10, ECF No. 15; *see generally* Defs.' Mot. Dismiss, ECF No. 2.

Accordingly, the Court finds that is has specific jurisdiction over Defendants. Defendants' Motion to Dismiss under 12(b)(2) is **DENIED**.

### B. 12(b)(6) – Failure to State a Claim

Defendants Molina and Nejad move to dismiss all of Plaintiff's claims against them under Rule 12(b)(6), asserting they executed the Impax and SurGradt Agreements as agents of FAD and cannot be held individually liable.[13] Plaintiff asserts that Molina and Nejad can be held liable in their individual capacity because each signed as a "customer" and failed to disclose they were signing the agreements on behalf of FAD.[14] The Court agrees with Defendants Molina and Nejad.

It is well established that "[a]n agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed." *Westmoreland v. Sadoux*, 299 F.3d 462, 466–67 (5th Cir. 2002); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) ("As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts."); *Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560, 573 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Generally, an agent for a disclosed principal is not personally liable on contracts that he signs for the principal."); *Roe v. Ladymon*, 318 S.W.3d 502, 521 (Tex. App.—Dallas 2010) ("[A]n agent for a disclosed principal is not liable on the principal's contract . . . ."); *Rugaart v. Rodriguez*, 2003 WL 22671571, at *2 (Tex. App.—Corpus Christi 2003) ("As a general rule, an agent is not liable for the contracts of the principal.").

The first sentence of both the Impax and SurGraft Agreements clearly identify that the parties to the agreements are Plaintiff and FAD and defines FAD as "Customer."[15] While Molina and Nejad executed their respective agreements in the space marked "Customer," a reasonable

---

[13] Defs.' Mot. Dismiss 11–15, ECF No. 2.
[14] Pl.'s Resp. 12–16, ECF No. 15.
[15] *See* Defs.' Mot. Dismiss 12, ECF No. 2; *see also* Defs.' Notice of Removal 38, 42, ECF No. 1.

inference cannot be made that they were trying to pass themselves off as the customer.[16] Rather the reasonable inference is that they were signing on behalf of FAD—the customer. Thus, because Molina and Nejad executed the Agreements on behalf of FAD, they cannot be held individually liable. And because the Court must dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory, Plaintiff's claims against Molina and Nejad are **DISMISSED with prejudice**. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

IV. **CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss for lack of personal jurisdiction and **GRANTS** Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted with respect to Defendants Molina and Nejad.

**SO ORDERED** on this **3rd day** of **February, 2026**.

*[signature]*
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[16] *See* Defs.' Notice of Removal 39, 43, ECF No. 1.