IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, | § | |
| SUCCESSOR IN INTEREST TO LEGACY | § | |
| MEDICAL CONSULTANTS, LLC, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00941-O |
| | § | |
| FOOT & ANKLE DOCTORS, INC. | § | |

**DEFENDANT'S FIRST AMENDED ANSWER WITH COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Defendant Foot & Ankle Doctors, Inc. ("FAD" or "Defendant") files this First Amended Answer to Plaintiff' Original Petition (ECF No. 1) and Counterclaim against Plaintiff Legacy Medical Consultants, LP, Successor in Interest to Legacy Medical Consultants, LLC ("Legacy"):

**I.**
**ADMISSIONS AND DENIALS**

**INTRODUCTION**

1.      Paragraph 1 is a narrative of Legacy's claims and, as such, does not contain factual allegations requiring admission or denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them, except that it admits that FAD and Legacy entered into an agreement for the sale of certain human tissue products and that FAD has declined to pay certain invoices that Legacy alleges are owed and outstanding.

**DISCOVERY CONTROL PLAN**

2.      Paragraph 2 does not contain any factual allegations requiring admission or denial.

**RELIEF**

3.      Paragraph 3 does not contain any factual allegations requiring admission or denial.

---

Defendant's First Amended Answer with Counterclaim                                    Page 1

## PARTIES

4.      Defendant admits the allegations in Paragraph 4.

5.      Defendant admits the allegations in Paragraph 5.

6.      Defendant admits that Wendy Molina is FAD's Director of Operations, but otherwise denies the allegations in Paragraph 6.

7.      Defendant admits that Farshid Nejad is a Doctor of Podiatric Medicine and FAD's Vice President, but otherwise denies the allegations in Paragraph 7.

## JURISDICTION AND VENUE

8.      Defendant admits that the Court has subject matter jurisdiction over this suit.

9.      Defendant admits FAD, Molina, and Dr. Nejad are non-residents and that FAD entered into contracts with Legacy.  Defendant otherwise denies the allegations in the first sentence of Paragraph 9.  Defendant admits that the contracts were performable and performed in part in Texas and that FAD engaged in transactions with Legacy under the contracts, made payments to Legacy, accepted products shipped from Legacy from Texas, and agreed to Texas law governing the contracts.  Defendant otherwise denies the allegations in the second sentence of Paragraph 9.

10.      Defendant denies that any court in Texas is a proper forum for this action, but admits that, subject to its objections to personal jurisdiction, venue for this action is appropriate and permissive in Tarrant County, Texas.  Defendant admits that the contracts were executed and performed by Legacy in Tarrant County and that Tarrant County is Legacy's county of residence.

11.      Defendant admits the allegations in Paragraph 11.

Defendant's First Amended Answer with Counterclaim                                        Page 2

## FACTUAL ALLEGATIONS

### I.    Plaintiff Legacy Medical Consultants

12.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12.

13.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, insofar as they describe what other healthcare providers do before purchasing products from Legacy. Defendant admits that FAD filled out a customer onboarding document.

14.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, insofar as they describe what other healthcare providers do before purchasing products from Legacy. Defendant admits that FAD executed purchase and fulfillment/rebate agreements with Legacy and that they contained terms bearing on the purchase and sale of products, procedures for placing orders, and payment terms, but otherwise denies the allegations in Paragraph 14.

### II.    The Agreement with Defendants

15.    Defendant admits the allegations in Paragraph 15, except that it denies that Molina entered into the Impax Agreement.

16.    Defendant admits the allegations in Paragraph 16, except that it denies that Dr. Nejad entered into the SurGraft Agreement.

17.    Those exhibits are documents that speak for themselves. Paragraph 17 contains legal conclusions and does not contain any factual allegations requiring an admission or a denial. Insofar as this Paragraph is deemed to contain factual allegations, Defendant denies them.

18.    Defendant admits the allegations in the first sentence of Paragraph 18 insofar as they relate to FAD's orders, but Defendant denies that orders were placed on behalf of Molina or Dr. Nejad individually.  Defendant admits the allegations in the second sentence of Paragraph 18 insofar as they relate to deliveries to FAD, except that FAD lack knowledge or information sufficient to form a belief about the truth of the allegation that Legacy would use second-day delivery.  Defendant admits the allegations in the last sentence of Paragraph 18 insofar as Legacy generally would provide the shipment's delivery status information to FAD, except that Defendant denies that it would be provided to Nejad or Molina, personally.

19.    Defendant admits that Legacy would send FAD invoices via email, but Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that this was done on the day Products were shipped.

20.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20, except that Defendant denies that it presently owes any sch amounts to Legacy.

21.    Paragraph 21 contains legal conclusions and does not contain any factual allegations requiring admission or denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

22.    Paragraph 22 contains legal conclusions and does not contain any factual allegations requiring admission or denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

23.    Exhibit A is a document that speaks for itself. The allegations in Paragraph 23 do not contain factual allegations requiring an admission or a denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

24.    Exhibit B is a document that speaks for itself. The allegations in Paragraph 24 do not contain factual allegations requiring an admission or a denial.  Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

25.    Defendant admits that Dr. Nejad and Molina signed the Agreements on behalf of FAD and communicated with Legacy on behalf FAD and that Molina submitted orders on behalf of FAD. Defendant otherwise denies the allegations in Paragraph 25.

26.    Defendant denies the allegations in Paragraph 26.

27.    Defendant denies the allegations in Paragraph 27.

**III.    Defendants Fail to Pay Legacy at Least $2,108,297 that is Owed**

28.    Defendant denies the allegations in Paragraph 28.

29.    Defendant denies the allegations in Paragraph 29.

30.    Defendant denies the allegations in Paragraph 30.

31.    Defendant admits the allegations in Paragraph 31, except insofar as they state or imply that the alleged payments were in fact due and owing.

32.    Defendant admits that FAD did not remit payments demanded by Legacy. Defendant otherwise denies the allegations ni Paragraph 32.

33.    The Exhibits are documents that speak for themselves. Paragraph 33 contains legal conclusions and does not contain any factual allegations requiring admission or denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

34.    Defendant admits the allegations in Paragraph 34.

35.    Defendant denies the allegations in Paragraph 35.

## CONDITIONS PRECEDENT

36.     Paragraph 36 consists of a legal conclusion and does not contain any factual allegations requiring admission or denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

## COUNT I

### BREACH OF CONTRACT
**(Against Defendants Molina and Foot & Ankle Doctors, Inc.)**

37.     Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

38.     Defendant admits that FAD entered into the Impax Agreement with Legacy on or about February 9, 2024. Defendant denies that Molina entered into the Impax Agreement.

39.     The Impax Agreement is a valid and enforceable contract between Legacy and Defendants. Defendant admits that the Impax Agreement is a valid and enforceable contract between Legacy and FAD. Defendant denies that the Impax Agreement is a valid and enforceable contract between Legacy and Molina.

40.     Defendant admits the allegations in Paragraph 40.

41.     Defendant admits that Legacy generated and sent order statements to FAD, shipped human tissue products to FAD, and generated and sent monthly invoices to FAD.  Defendant denies all other allegations in Paragraph 41.

42.     Defendant denies the allegations in Paragraph 42.

43.     Defendant denies the allegations in Paragraph 43.

## COUNT II

### IN THE ALTERNATIVE, QUANTUM MERUIT
**(Against Defendants Molina and Foot & Ankle Doctors, Inc.)**

44.    Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

45.    Defendant admits that Legacy provided goods and services to FAD that had value, but otherwise denies the allegations in Paragraph 45.

46.    Defendant admits that the goods and services Legacy provided were requested by FAD and benefited FAD, but otherwise denies the allegations in Paragraph 46.

47.    Defendant denies the allegations in Paragraph 47.

48.    Defendant denies the allegations in Paragraph 48.

49.    Defendant admits that it accepted and used products received from Legacy by using them to treat patients. Defendant denies all other allegations in Paragraph 49.

50.    Defendant admits the allegations in Paragraph 50.

51.    Defendant admits that it has not paid certain invoices that Legacy claims are owed and outstanding, but otherwise denies the allegations in Paragraph 51.

52.    Defendant denies the allegations in Paragraph 52.

## COUNT III

### IN THE ALTERNATIVE, PROMISSORY ESTOPPEL
**(Against Defendants Molina and Foot & Ankle Doctors, Inc.)**

53.    Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

54.    Defendant denies the allegations in Paragraph 54.

55.    Defendant denies the allegations in Paragraph 55.

56.     Defendant denies the allegations in Paragraph 56.

57.     Defendant denies the allegations in Paragraph 57.

### COUNT IV

### IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Against Defendants Molina and Foot & Ankle Doctors, Inc.)

58.     Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

59.     Defendant admits that Legacy delivered products to FAD and issued invoices for them, but otherwise denies the allegations in Paragraph 59.

60.     Defendant denies the allegations in Paragraph 60.

61.     Defendant denies the allegations in Paragraph 61.

62.     Defendant denies the allegations in Paragraph 62.

### COUNT V

### BREACH OF CONTRACT
### (Against Defendants Nejad and Foot & Ankle Doctors, Inc.)

63.     Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

64.     Defendant admits that FAD entered into the SurGraft Agreement with Legacy on or about April 1, 2024. Defendant denies that Dr. Nejad entered into the SurGraft Agreement.

65.     Paragraph 65 consists of a legal conclusion and does not contain any factual allegations requiring admission or denial. Insofar as this paragraph is deemed to contain factual allegations, Defendant denies them.

66.     Defendant admits the allegations in Paragraph 66.

67.     Defendant admits that Legacy generated and sent order statements to FAD, shipped human tissue products to FAD, and generated and sent monthly invoices to FAD.  Defendant denies all other allegations in Paragraph 67.

68.     Defendant denies the allegations in Paragraph 68.

69.     Defendant denies the allegations in Paragraph 69.

## COUNT VI

### IN THE ALTERNATIVE, QUANTUM MERUIT
**(Against Defendants Nejad and Foot & Ankle Doctors, Inc.)**

70.     Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

71.     Defendant admits that Legacy provided goods to FAD that had value, but otherwise denies the allegations in Paragraph 71.

72.     Defendant admits that the goods Legacy provided were requested by FAD, but otherwise denies the allegations in Paragraph 72.

73.     Defendant denies the allegations in Paragraph 73.

74.     Defendant denies the allegations in Paragraph 74.

75.     Defendant admits that FAD accepted and used products received from Legacy by using them to treat patients.  Defendant denies all other allegations in Paragraph 75.

76.     Defendant admits the allegations in Paragraph 76.

77.     Defendant admits it has not paid certain invoices that Legacy claims are owed and outstanding, but otherwise denies the allegations in Paragraph 77.

78.     Defendant denies the allegations in Paragraph 78.

## COUNT VII

### IN THE ALTERNATIVE, PROMISSORY ESTOPPEL
### (Against Defendants Nejad and Foot & Ankle Doctors, Inc.)

79.   Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

80.   Defendant denies the allegations in Paragraph 80.

81.   Defendant denies the allegations in Paragraph 81.

82.   Defendant denies the allegations in Paragraph 82.

83.   Defendant denies the allegations in Paragraph 83.

## COUNT VIII

### IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Against Defendants Nejad and Foot & Ankle Doctors, Inc.)

84.   Defendant reasserts and incorporates by reference its responses to the allegations in the foregoing paragraphs.

85.   Defendant admits that Legacy delivered products to FAD and issued invoices for them, but otherwise denies the allegations in Paragraph 85.

86.   Defendant denies the allegations in Paragraph 86.

87.   Defendant denies the allegations in Paragraph 87.

88.   Defendant denies the allegations in Paragraph 88.

### SUIT ON SWORN ACCOUNT

89.   Defendant reasserts and incorporates by reference their responses to the allegations in the foregoing paragraphs.

90.    Defendant admits that Legacy provided goods to FAD under contract(s) with FAD and founded on business dealings between them, but otherwise denies the allegations in Paragraph 90.

91.    Defendant denies the allegations in Paragraph 91.

92.    Paragraph 92 does not contain any factual allegations requiring an admission or a denial, except insofar as it is alleged that the exhibit reflects amounts owed by Defendant, in which case Defendant denies those allegations.

93.    Defendant denies the allegations in the first sentence of Paragraph 93. Defendant lacks knowledge or information sufficient to admit or denies the allegations in the second sentence of Paragraph 93.

94.    Defendant denies the allegations in Paragraph 94.

95.    Defendant denies the allegations in Paragraph 95.

96.    Defendant denies the allegations in Paragraph 96.

## REQUEST FOR JURY TRIAL

97.    Paragraph 97 contains a jury demand and does not contain any factual allegations requiring admission or denial.

## CONCLUSION AND PRAYER FOR RELIEF

The final paragraph is a prayer for relief and does not contain any factual allegations requiring admission or denial. Defendant denies that Plaintiff is entitled to the relief sought in this paragraph.

**II.**
**<u>AFFIRMATIVE DEFENSES</u>**

1. Plaintiff has failed to state a claim for which relief may be granted.

2. The Parties agreed that Legacy would verify Medicare coverage for products (as applied to specific patients) prior to FAD's ordering the products. If Legacy issued an "approved" Insurance Verification Request form ("IVR"), then FAD would purchase the products in reliance upon the verification of coverage. As part of the program, Legacy promised it would credit FAD for its actual costs in the event of a denial by Medicare of coverage for products that Legacy had verified as covered (with limited exceptions not applicable here).

3. The Agreements are ambiguous with respect to payment terms and the conditions relating to insurance verification and Medicare approval.

4. Plaintiff fraudulently induced FAD into entering into the Agreements. Through its Director of National Contracts, Alex Poulemanos, and its distributors at Advanced Medical Administration ("AMA"), Joseph Frustaci and Roger Chasteen, Plaintiff promised FAD in early 2024 that it would credit FAD for its actual costs in the event of a denial by Medicare of coverage for products that Legacy had verified as covered (with limited exceptions not applicable here). At the time these promises were made, Plaintiff apparently had no intention of performing them. FAD relied upon Plaintiff's representations, and FAD would not have entered into the Agreements or ordered any Legacy products if it were not for the representations. Plaintiff also mispresented the quality, status, and acceptability of its products with respect to FDA approval and suitability for the services Plaintiff knew FAD was providing. FAD relied upon these to its detriment as well. FAD incorporates by reference the allegations set forth below in FAD's Counterclaims as if fully set forth herein.

5. Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

6.      Plaintiff's claims are barred in whole or in part by the doctrines of equitable estoppel and quasi-estoppel.

7.      Insofar as the Agreements' written payment terms conflict with the parties' agreement that FAD would be entitled to a credit for its actual costs in the event of a denial or underpayment by Medicare, Legacy waived those payment terms.

8.      The parties' course of dealing and/or course of performance demonstrated that Legacy would credit FAD for its actual costs in the event of a denial by Medicare of coverage for products that Legacy had verified as covered (with limited exceptions not applicable here).

9.      Plaintiff has failed to mitigate its alleged damages.

10.      Plaintiff's claims for unjust enrichment, quantum meruit, and promissory estoppel fail because an express contract covers the subject matter of those claims.

11.      Plaintiff committed a prior material breach of the Agreements when it began demanding payment and attempting collection on invoices for products that were not approved by Medicare and when it failed to apply the promised credits to FAD after Medicare denied and underpaid claims.

12.      In the event that it is determined that Plaintiff is entitled to recover some measure of damages in this case, Defendant is entitled to an offset.

Defendant's investigation of the facts is ongoing. Defendant reserves the right to amend, modify, or supplement these defenses after further discovery, to the extent allowed by the Federal Rules of Civil Procedure, the Local Rules, and this Court's orders.

*     *     *

WHEREFORE, Defendant prays that Plaintiff recover nothing by reason of this suit.

---

## III.
## COUNTERCLAIMS

### Parties and Jurisdiction

1.     Counterclaimant FAD is a corporation incorporated and existing under the laws of the State of California. FAD's principal place of business is in Beverly Hills, California.

2.     Counterclaim Defendant Legacy is a Texas limited partnership whose sole owner is Jonathan Stephen Knutz. Knutz is an individual domiciled in the State of Texas.

3.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds the jurisdictional minimum.

4.     The Court has general personal jurisdiction over Legacy.

5.     This District is a proper venue for these counterclaims.

### Factual Background

6.     FAD is a medical practice that operates numerous clinics in Southern California. FAD's doctors specialize in Foot and Ankle Medicine and Surgery, Sports Medicine, Trauma/Injury/Fractures, Pediatric Foot Care, Wound Care, Diabetic Foot Care, Arthritic Foot & Ankle, Geriatric Foot Care, and other specialties within the practice of podiatry.

7.     In early February 2024, a Legacy distributor, Advanced Medical Administration ("AMA"), reached out to FAD about Legacy's Impax Membrane skin graft products. FAD previously had used certain other Legacy products.

8.     During this timeframe, Dr. Nejad and other FAD representatives had discussions with Joe Frustaci ("Frustaci"), a senior account manager at AMA, and Roger Chasteen ("Chasteen"), CEO of AMA, about Legacy's billing practices and procedures and insurance-verification services relating to Legacy's Impax products.

---

9.    Frustaci and Chasteen explained to FAD that Legacy's practice was to verify insurance or Medicare coverage for its products and then, in the event the customer purchased products in reliance on this verification, Legacy would give the customer a credit for any amounts not paid by Medicare in the event of a denial or underpayment (unless the denial or underpayment was due to the provider's use of a product that was not medically necessary). Frustaci and Chasteen explained that, even for items that were denied by Medicare due to a billing error or other mistake by the customer, Legacy would take a collaborative approach to the problem and assist in fixing the mistake and obtaining reimbursement from Medicare. According to Frustaci and Chasteen, Legacy would not resort to simply seeking full payment for the products.

10.    These statements from AMA were subsequently reiterated, confirmed, or corroborated by Alex Poulemanos ("Poulemanos"), Legacy's Director of National Contracts, and other Legacy employees, during the early part of 2024.

11.    AMA had a distributor agreement with Legacy, pursuant to which Legacy authorized AMA to take certain actions on Legacy's behalf in the role of distributor. AMA served Legacy by locating potential customers, facilitating the signing-up of those customers, coordinating customer education on Legacy products, providing information on Legacy's insurance-verification process and billing procedures, providing ongoing order support, and connecting customers to Legacy's insurance-reimbursement team.

12.    Via a February 5, 2024 email, Chasteen provided Dr. Nejad with several Legacy onboarding and training documents and informed Dr. Nejad of Legacy's assurance program, which applied to "any grafts not paid by Medicare."

13.    In reliance upon Legacy's representations, FAD signed the document entitled "Purchase Agreement," effective February 9, 2024, which is Exhibit A to Legacy's complaint (ECF

No. 1). Despite language in that form document stating that it was the entire agreement between the parties, the Impax purchase agreement was not a fully integrated contract, but rather its terms were informed and supplemented by other documents and communications, including Legacy's insurance verification forms, customer onboarding documents, orders, and the representations from Legacy concerning billing practices and Medicare reimbursement.

14.     In or around March 2024, Frustaci informed FAD via email about Legacy's SurGraft FT Membrane skin graft products.

15.     In reliance upon Legacy's representations, FAD signed the document entitled "Fulfillment / Rebate Agreement," effective April 1, 2024, which is Exhibit B to Legacy's complaint (ECF No. 1). Despite language in that form document stating that it was the entire agreement between the parties, the SurGraft fulfillment/rebate agreement was not a fully integrated contract, but rather its terms were informed and supplemented by other documents and communications, including Legacy's insurance verification forms, customer onboarding documents, orders, and the representations from Legacy concerning billing practices and Medicare reimbursement.

16.     On or about April 12, 2024, Poulemanos and Frustaci came to FAD's Beverly Hills office and discussed Legacy's billing practices and procedures and insurance-verification services relating to the SurGraft products with Dr. Nejad and FAD's Director of Operations, Wendy Molina ("Molina"). Poulemanos reiterated that Legacy would verify insurance or Medicare coverage for its products and then give FAD a credit for any amounts not paid by Medicare in the event of a denial or underpayments.

17.     On April 18, 2024, Poulemanos provided Molina with a written summary of the assurance program. Under Legacy's assurance program, Legacy promised it would credit providers

for their actual costs stemming from a denial of coverage by Medicare for products that Legacy had verified as covered by Medicare.

18.    Legacy, acting through its employees and its distributor AMA, made the representations described in the foregoing paragraphs to induce FAD into executing the agreements and ordering Legacy's Impax and SuGraft products.

19.    FAD, in turn, ordered Impax and SurGraft products and incurred costs to apply the products (e.g., compensation of doctors) in reliance on Legacy's representations.

20.    FAD did not profit from the Legacy products at issue in this lawsuit.

21.    FAD complied with Legacy's insurance verification requirements, including use of Legacy's "IVR" forms, when ordering Impax Membrane and SurGraft FT Membrane skin graft products. By virtue of its availment of the IVR process, FAD participated in Legacy's "assurance program."

22.    For several Impax and Sur-Graft products that FAD ordered after receiving "approved" IVRs from Legacy, Medicare denied or underpaid the corresponding claims for payment. Despite Legacy's prior representations and assurances that it would provide a credit under such circumstances, Legacy refused to provide appropriate credits to FAD and instead demanded full payment from FAD for those products.

23.    FAD sustained substantial damages in reliance upon Legacy's misrepresentations.

**Causes of Action**

**Count One: Breach of Contract**

24.    FAD incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

---

25. The Impax purchase agreement and the SurGraft fulfillment/rebate agreement, as described above (collectively, "the Contracts") were entered into between FAD and Legacy.

26. Legacy breached the Contracts by refusing to credit FAD for costs resulting from Medicare denials and underpayments on products that Legacy had verified as covered.

27. With respect to such products, FAD was excused from performing due to Legacy's prior material breaches of the Contracts.

28. With respect to products covered by Medicare, FAD performed under the Contracts by remitting payment for those products.

29. As a result of FAD's breaches of the Contracts, FAD sustained damages, including the charges on products for which Medicare did not provide reimbursement and other costs FAD incurred in reliance on Legacy's assurances of credits such as uncoverable payments to providers hired to apply skin graft products to patients.

30. FAD is entitled to recover its attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code.

**Count Two: Fraudulent Inducement**

31. FAD incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

32. Chasteen, Frustaci, and Poulemanos had actual authority to speak on behalf of Legacy. In dealing with FAD, those individuals acted within the scope of their engagements with Legacy. Legacy is vicariously responsible for Poulemanos, who acted within the course and scope of his employment.

33. Alternatively, Chasteen, Frustaci, and Poulemanos had apparent authority to speak on behalf of Legacy. Those individuals disclosed Legacy as the principal. Chasteen and Frustraci

disclosed their roles with Legacy's distributor, AMA, and Poulemanos disclosed his role as a Legacy employee. These individuals publicly represented themselves in those roles, and Legacy, with full knowledge of all material facts, knowingly permitted them to hold themselves out as having authority to act on Legacy's behalf.  FAD reasonably believed that Chasteen, Frustaci, and Poulemanos had authority to speak for Legacy and reasonably relied upon such authority in entering into the Contracts.

34.     Alternatively, Legacy ratified the statements and conduct of those individuals or benefited from the statements and conduct and had knowledge of them.

35.     Legacy, through its agents named above, made material false representations to FAD and/or made false representations to those agents with the intent or expectation that they be repeated to deceive FAD. This included, for example, Legacy's representation that it would verify Medicare coverage for products (as applied to specific patients) and thereafter give FAD a credit for any amounts not paid by Medicare in the event that Medicare denied coverage or underpaid for products that Legacy had verified as covered.

36.     Legacy possessed special knowledge of its products and related Medicare information to which FAD did not have access.  That is why, for example, FAD followed Legacy's IVR and insurance-verification procedures and participated in Legacy's assurance program.

37.     At the time Legacy made its contractual promises to FAD, it had no intention of performing them. Legacy made the representations knowing they were false or reckless as to the truth.

38.     Legacy intended for FAD to rely on the representations or had reason to expect that FAD would rely upon them.

---

39.     Legacy expected that FAD would enter into the Contracts based on the false representations.

40.     FAD actually and justifiably relied on the representations in entering into the Contracts. FAD did not disclaim reliance.

41.     Legacy's fraudulent representations and promises caused FAD to sustain damages, including charges on products for which Medicare did not provide reimbursement and other costs FAD incurred in reliance on Legacy's assurances such as uncoverable payments to providers hired to apply skin graft products to patients.

42.     FAD is entitled to recover its attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code.

**Prayer**

FAD requests that judgment be entered against Legacy and that FAD be awarded the following relief:

a)     Actual damages;

b)     Reasonable and necessary attorneys' fees and costs;

c)     Pre- and post-judgment interest at the highest rate allowed by law.

Respectfully submitted,

*/s/ Jordan M. Parker*
Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
Michael Ackerman
State Bar No. 24120454
mackerman@canteyhanger.com

CANTEY HANGER LLP
Cantey Hanger Plaza
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
(817) 877-2800  Telephone
(817) 877-2807  Facsimile

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on March 10, 2025, a true and correct copy of the foregoing was served on counsel for all parties via CM/ECF filing.

*/s/ Michael Ackerman*
Michael Ackerman